**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CHRISTOPHER KONONOWECH,
Individually and on behalf of all
other similarly situated individuals,                Case No.

    Plaintiffs,                                                     Hon.

v.

BEAUMONT HEALTH INC.,

    Defendant.

_____

Noah S. Hurwitz (P74063)
NACHTLAW, P.C.
Attorneys for Plaintiff
101 N. Main Street, Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
nhurwitz@nachtlaw.com

_____

There is no other pending or resolved civil action arising out
of this transaction or occurrence alleged in the complaint.

## COMPLAINT AND JURY DEMAND

Plaintiff Christopher Kononowech, by and through his attorneys,

NACHTLAW, P.C., hereby allege as follows:

## INTRODUCTION

This is an action for money damages, liquidated damages, costs, attorneys'

fees and other relief as a result of Defendant Beaumont Health Inc.'s failure to follow

its own "On-Call and Called-In Policy" stating that "Non-exempt employees who are required to remain on Beaumont Health premises, or so close to the premises that they cannot use their time effectively for their own purposes, are considered working, and are not on-call." Plaintiff and other similarly situated employees who are required to remain on Beaumont Health premises, or so close to the premises that they cannot use their time effectively for their own purposes, are not "on-call" and must be compensated for unpaid wages, on-call compensable hours, overtime, and vacation time in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. Plaintiff's FLSA claims are brought pursuant to the opt-in collective action provisions of the Fair Labor Standards Act under 29 U.S.C. § 216(b), sometimes referred to as an "opt-in" class action.

## **PARTIES AND JURISDICTION**

1.      Plaintiff Christopher Kononowech is an individual residing in Ypsilanti, Michigan, which is located in Washtenaw County.

2.      Defendant Beaumont Health, Inc. is a Domestic Nonprofit Corporation with its registered business address in Southfield, Michigan, which is located in Oakland County.

3.      This Court has general federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff is bringing claims pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

4.      Venue is proper in this Court because Defendant's registered business address is located within the Eastern District of Michigan.

## GENERAL ALLEGATIONS

5.      Defendant is a domestic nonprofit corporation that operates a large chain of hospitals, otherwise known as Beaumont Hospitals, across Southeastern Michigan.

6.      At all times relevant to this Complaint, Defendant has been, and continues to be, an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203.

7.      At all times relevant to this Complaint, Defendant was Plaintiff's employer.

8.      Plaintiff brings this action on his own behalf and on behalf of all other similarly situated employees of Defendant, present and former, who were and/or are affected by the actions, pay schemes, policies and procedures of any of Defendant's Michigan hospitals.

9.      In addition, Plaintiff brings this action in his individual capacity, separate and apart from the class and/or collective action claims set forth herein.

10.      At all times relevant to this Complaint, Plaintiff was employed as a "Cardiovascular Technician" with Defendant.

11.     As a cardiovascular technician, Plaintiff is scheduled for mandatory "on-call" shifts in addition to his regularly scheduled working hours for Defendant.

12.     Plaintiff is required to respond within thirty (30) minutes of Defendant's call to ensure immediate availability in the event of an emergency to administer primary percutaneous coronary intervention (PCI).

13.     The 30-minute response time requirement is at the direction of the Defendant's own policy and required by both the State of Michigan's guidelines and those of the Joint Commission.

14.     Under the Procedure heading of the Hospital's "On-Call and Called-In Policy," Section E states:

> An employee who is on-call must meet the following criteria to receive on-call pay: (1) Thoroughly check the working status of the telephone or pager before on-call status begins and maintain it in operational mode at all times; (2) Stay within the telephone or pager's range; (3) When notified by telephone or pager, respond to the call within designated departmental timeframes, usually between 5-15 minutes. Arrive in the work unit within 30-60 minutes or less after receiving the call, depending on designated departmental timeframes; and (4) Arrive in a condition "fit" for duty.

15.     Section 4(9) of the Michigan Department of Health and Human Services Certificate of Need Review Standards for Cardiac Catherization Services states:

> At least two physicians credentialed to perform PCI must commit to functioning as a coordinated group willing and able to provide the service at the hospital on a 24-hour per day, 365 day per year call schedule, with ability to be on-site and available to operate *within 30 minutes* of identifying the need for primary PCI.

16.     Comprehensive Cardiac Center Management Chapter 7, Section 5 of the Joint Commission Prepublication Standards states:

> At least one cardiac interventionalist is available by phone within 10 minutes and available in house within 30 minutes, 24 hours a day, 7 days a week. Other cardiac catherization/interventional suite personnel are available within 30 minutes, 24 hours a day, 7 days a week, to perform emergency cardiac catherization/interventional procedures.

17.     Plaintiff follows these policies as written, as failure to reach the Defendant's premises within the 30-minute period results in disciplinary measures enforced by Defendant.

18.     Under Defendant's "On-Call and Called-In Policy," Section H states: "Employees who are scheduled to be on-call and fail to respond within the timeframes established by the department may be subject to disciplinary action."

19.     Section IV of the Hospital's "On-Call and Called-In Policy" states the following:

> Non-exempt employees who are required to remain on Beaumont Health premises, or so close to the premises that they cannot use their time effectively for their own purposes, are considered working, and are not "on call." All such hours are to be reported as time worked, paid at the base rate plus any applicable shift differential and overtime pay.

20.     Plaintiff and other similarly situated individuals are among the "non-exempt employees who are required to remain on Beaumont Health Premises" in accordance with Section IV of Defendant's policy, which expressly states that they are in fact not "on call."

21.     The 30-minute response time requirement, coupled with Plaintiff's lack of proximity to the hospital, imposes an implicit on-premises living requirement, geographical restriction, and restrictive response time.

22.     Defendant is fully aware of the travel constraints it imposes on Plaintiff and other similarly situated individuals because it provides furnished "call rooms" on Defendant's premises for its employees to reside in during on-call shifts. Additionally, the keys that provide access to this room were provided to Plaintiff by Defendant's management.

23.     The need for call rooms is recognized by Defendant because other employees outside of the cardiovascular department have separate call rooms in different sections of the Hospital.

24.     At all times relevant to this Complaint, Plaintiff's supervisors are knowledgeable of his home address and why he remains on premises instead of shuttling back and forth.

25.     Plaintiff's exceptional average response times are documented in charts that are reviewed by both physicians and management of the catheterization lab.

26.     Plaintiff believes that no patient has ever died due to the Cardiology Department's tardiness when responding to an emergency and this has been documented by management.

27.     Physicians, including Dr. George Nahhas, Dr. Mustafa Hashem, and Dr. Saba Assar have personally asked Plaintiff to follow up with patients post-complication because of the requirement for him to stay overnight on Defendant's premises.

28.     Plaintiff, upon information and belief, is aware of at least six (6) other current and former employees from the Cardiology Department who also use the call room to remain on Defendant's premises, including Kevin Moss, Antoinette Oddy, David Ashcroft, Sherry Comer-Wilcox, Lauren Vitore, and Nancy Farkas.

29.     Plaintiff has conducted interviews for potential new hires alongside management where the candidates' residential addresses similarly make it impracticable for them to reach the Hospital within the 30-minute response time, further demonstrating the requirement of employees like Plaintiff to remain on Defendant's premises while on-call.

30.     During the interviews for potential new hires that Plaintiff assisted with, management explained to candidates that travel restrictions will not be an issue because Defendant "has three new call rooms" for use by staff members.

31.     Upon information and belief, Defendant continues to hire employees who reside in locations that make it impossible to effectively travel to Defendant's premises within the 30-minute constraint when called to duty. One such employee was hired as early as February 2021.

32.     Plaintiff's time spent while on-call on Defendant's premises is predominantly for Defendant's benefit and he cannot use this time for his own purposes.

33.     Furthermore, Plaintiff is called upon at least once per on-call shift to perform emergency catherization, which is documented by the charts reviewed by physicians and management of the catherization lab. Plaintiff therefore had to anticipate a call to duty at any moment on every shift.

34.     While residing on Defendant's premises, Plaintiff cannot consume alcohol, feel free to run personal errands, celebrate family birthdays, attend religious holidays like Christmas and Easter, sleep in his own bed with his wife, or read bedtime stories to his three-year-old daughter.

35.     Plaintiff is currently paid four ($4) dollars an hour for "on-call time." When the emergency on-call team is activated, Plaintiff is then paid 1.5 times his base wages for performing emergency PCI. This contradicts Section IV of the Hospital's own policy and deprives Plaintiff and other similarly situated individuals of payment "at base rate plus any applicable shift differential and overtime pay."

36.     Plaintiff and other similarly situated individuals are therefore being deprived of a full hourly wage, in addition to overtime wages.

37.     By not following its own policy, Defendant also deprives Plaintiff and other similarly situated individuals of a fair accrual of vacation time.

38.     Plaintiff is owed in unpaid base and overtime wages an amount of approximately $73,686.16. The calculation is derived from combining (a) Plaintiff's base wage for the "on-call hours" that increases his biweekly hours to 80; and (b) Plaintiff's overtime wage for the "on-call" hours that exceed 80 in a biweekly work period.

39.     Going back to the pay period ending July 14, 2018, utilizing a base wage that is adjusted to reflect Plaintiff's wage at the time of calculation, and factoring 2,062 total on-call hours that have only been reimbursed at $4 per hour, Plaintiff is owed $38,925.08 in unpaid base pay and $34,761.08 in unpaid overtime pay (*i.e.*, the $73,686.16 total).

40.     Pursuant to the FLSA's liquidated damages provision, the wages owed to Plaintiff is doubled, and Defendant has deprived Plaintiff of at least $147,372.32 in unpaid compensation.

41.     On or around January 8, 2021, Defendant formally denied Plaintiff's request for additional compensation, leaving Defendant no choice but to initiate legal action.

42.     With respect to the collective action claims under the FLSA, the collective action class is defined as (a) all current and former cardiovascular technicians of Defendant who are/were required to be on Defendant's premises and deprived of unpaid wages, compensable time, overtime, and vacation time from

three (3) years preceding the filing of this lawsuit through the culmination of this litigation at any of Defendant's Michigan hospitals.  Plaintiffs reserve the right to amend said class definition consistent with information obtained through discovery.

**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED EMPLOYEES, CURRENT AND FORMER**

43.     Plaintiff incorporates all proceeding paragraphs above as though fully stated herein.

44.     At all times relevant to this action, Plaintiffs were Defendant's employees within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

45.     At all times relevant to this action, Defendant was the employer of Plaintiffs within the meaning of the FLSA.

46.     In violation of the FLSA, Defendant failed to pay Plaintiffs and other similarly situated compensation for unpaid wages, compensable time, overtime, and vacation time.

47.     Defendant has a policy and practice of failing and refusing to pay Plaintiffs and all other similarly situated employees for all hours worked in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq.

48.     Defendant's conduct in this regard was a willful violation of the FLSA.

10

49.     As a result of Defendant's unlawful acts, Plaintiffs and all other similarly situated current and former employees are being deprived of earned wages in amounts to be determined at trial. They are entitled to compensation for unpaid compensable hours, wages, interest, liquidated damages, attorneys' fees and costs, and any other remedies available at law or in equity.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff claims, individually and on behalf of all other similarly situated as follows:

a.     Designation of this action as a collective action pursuant to the FLSA and prompt issuance of notice pursuant to 29 U.S.C. § 216(b);

b.     An award of unpaid overtime wages under the FLSA;

c.     An award of unpaid wages for compensable hours under the FLSA;

d.     An award of unaccrued vacation time under the FLSA;

e.     An award of liquidated damages under the FLSA;

f.     Interest;

g.     Attorneys' fees and costs under the FLSA; and

h.     Such other relief as in law or equity may pertain.

Respectfully Submitted,
NACHTLAW, P.C.

/s/ *Noah S. Hurwitz*

 

 

 

 

        Noah S. Hurwitz (P74063)
        Attorneys for Plaintiff
        101 N. Main Street, Suite 555
        Ann Arbor, MI 48104
        (734) 663-7550

Dated: June 15, 2021

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CHRISTOPHER KONONOWECH,
Individually and on behalf of all
other similarly situated individuals,                    Case No.

     Plaintiffs,                                              Hon.

v.

BEAUMONT HEALTH INC.,

     Defendant.

_____

Noah S. Hurwitz (P74063)
NACHTLAW, P.C.
Attorneys for Plaintiff
101 N. Main Street, Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
nhurwitz@nachtlaw.com

_____

## **DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff Christopher Kononowech, by and through his

attorneys, NachtLaw, P.C., and hereby demands a jury trial in the above-captioned

matter for all issues so triable.

Respectfully Submitted,

NACHTLAW, P.C.


/s/ *Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
Attorneys for Plaintiff
101 N. Main Street, Suite 555
Ann Arbor, MI 48104
(734) 663-7550

Dated: June 15, 2021

2